**DEMPSEY v. GUARANTY TRUST CO. OF NEW YORK.**

No. 8230.

Circuit Court of Appeals, Seventh Circuit.

Nov. 12, 1943.

Norman Crawford and Thomas Hart Fisher, both of Chicago, Ill., for appellant.

Cyrus H. Adams and James P. Dillie, both of Chicago, Ill., and Otis T. Bradley, of New York City (Isham, Lincoln & Beale, and J. Sinclair Armstrong, all of Chicago, Ill., and Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, of counsel), for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from an order denying a temporary restraining order and preliminary injunction, and sustaining appellee's motion to dismiss appellant's bill

of complaint. It presents the question of the right of an ancillary administrator, appointed by the Probate Court of Cook County (Illinois) to administer the estate of a non-resident alien decedent, to compel a New York trust company, the custodian of certain tangible personal property deposited with it in New York during the lifetime of the decedent, to turn over that property for administration in Illinois.

The facts out of which this litigation arises are most unusual. The decedent was the Vicomte Gabriel de Fontarce, a French national and adherent of General de Gaulle. He died in London, England, in June, 1941. He had not lived in France for many years prior to his death, but according to the bill of complaint, he was at the time of his death, domiciled either in Great Britain, Egypt, Eire or France. He left property in many parts of the New and Old World, including the securities involved in this controversy, which were deposited with the Guaranty Trust Company in New York City in November, 1940, and have remained in its vaults in that city since that date. They consist of the following bearer shares:

> 1,000 Anglo-American Corporation of South Africa, Ltd.,
> 6,500 Government Gold Mining Areas (Moderfontein Consolidated, Ltd.),
> 4,000 Randfontein Estates Gold Mining Co.,
> 12,000 African and European Investment Co., Ltd.

The stocks are known as "Kaffirs," and the parties agree that they are treated by South African law as tangible property, and that title to them passes by manual delivery, without endorsement.

In September, 1941, a niece of the decedent who resided in New York filed her petition in the Surrogate's Court for the County of New York for letters of administration on the estate of decedent, averring that the decedent died in June, 1941, a resident of either Great Britain or Eire; that no will had been found disposing of his possessions in the United States; that decedent died possessed of certain personal property in New York of a value not to exceed $120,000, listing the securities referred to above; that he left him surviving, in addition to the petitioning niece, the following:

Maurice de Fontarce, age about 25, last heard of in occupied France,

Henri de Fontarce, age about 23, whose address was given in Brazil,

Jean Pierre de Fontarce, age about 39, last heard of in Morocco in 1933.

The relationship of these persons to the decedent was not defined, and the petition stated that decedent left no widow, child, issue of deceased child, or adopted child, and no other relatives than the four referred to above.

That application for letters was denied on November 27, 1941, for the reason that the record disclosed that decedent had left an English will, expressly limited to the disposition of his property in England and Ireland, in which he stated that his will dealing with his general estate was deposited with Maitre Eymin, notary, in the Principality of Monaco. The surrogate, in denying the application, stated that under the circumstances, the possible existence of a valid will disposing of the general estate, including the assets in New York, could not be ignored, and that although wartime conditions might delay the obtaining of accurate information from the notary in Monaco, it was important that the existence or non-existence of the will be established, and also whether, if it were in existence, it was valid or invalid under the law of that principality. He suggested alternative means for obtaining the necessary information, and stated that in the meantime, final disposition of the application would be held in abeyance. In re De Fontarce's Estate, 178 Misc. 10, 32 N.Y.S. 2d 941. This proceeding was still pending in November, 1942, according to the certificate of the clerk of the Surrogate's Court.

On December 30, 1941, letters of administration were granted to the Trust Company of Chicago by the Probate Court of Cook County, on the petition of Thomas Hart Fisher, a creditor, showing a waiver of the right to administer filed by the Public Administrator, and an acceptance by the Trust Company of the appointment if made. According to the petition, the estate consisted wholly of personal property of a value not to exceed $250. Proof of heirship was made on that day by the niece who had filed the New York application for letters. In reply to a question as to whether the decedent had adopted any children she stated that she did not know, that, "He said he had two adopted sons." She did not mention the three persons listed in the New York petition. Hence the proof of heirship showed that decedent's

only heirs at law and next of kin, if any, and if living, were unknown; their names and addresses were unknown, and had not been ascertained upon due and diligent search and inquiry. The niece who filed the petition in New York and who testified in the Cook County proceeding was not mentioned in the declaration of heirship.

Subsequently, on February 13, 1942, the Trust Company was allowed to resign as administrator, and appellant, the Public Administrator, was appointed to act, with a direction to pay the Trust Company $50 for its services. On the same day, the Probate Court also allowed the claim of Thomas Hart Fisher, the creditor on whose petition the letters issued, for $7,513.77, for services found to have been rendered for decedent prior to his death. On March 3, 1942, before the inventory was filed, the Probate Court authorized appellant to file suit in the United States District Court for the Northern District of Illinois, against appellee, to recover the securities heretofore referred to, and to employ as his attorney in the prosecution of that suit, one Norman Crawford, and to pay him 25% of anything recovered by such suit for his services.

On March 9, more than sixty days after the issuance of letters, the court approved the inventory filed in the proceedings showing assets consisting of one trunk and various articles of wearing apparel and medicines of a total value of $50.25, and the Kaffirs (value unknown) as the only property of the estate which had come to the sight or knowledge of the administrator. The record also shows, by affidavit of a New York attorney, that on January 2, 1942, three days after the filing of Fisher's petition for letters of administration, and two months prior to the filing of the inventory, two trunks which had been received by the Harvard Club of New York for storage for the Vicomte de Fontarce on April 14, 1941, were taken from storage there by the Railway Express Company at the request of Fisher and checked on his railroad ticket to Chicago. The record does not disclose whether one of these, trunks formed the basis for the averment of property in Cook County upon which the letters of administration were granted December 30, 1941, and if so, why the second one was not also included in the inventory approved March 9, 1942.

Pursuant to the authority granted March 3, by the Probate Court of Cook County, appellant filed his bill of complaint against appellee on March 7, attaching thereto as exhibits a certified copy of his letters of administration and an unverified copy of the inventory subsequently approved by the court on March 9. The bill averred that appellant as administrator of the estate was then the lawful owner of the entire right, title and interest, legal and equitable in the assets and securities heretofore described which it stated had a value of $120,000; that because of the complex facts as to the domicile of decedent, it would be impossible for either the Probate Court of Cook County or the court of the forum to determine his true domicile "except by evidence to be presented in said Probate Court or in this Court in the event the question of domicile of the decedent shall be relative to this proceeding"; that decedent left no debts of any kind in the United States except in the State of Illinois, and that he had never actually been in the United States except as a temporary visitor many years before his death; that administration of his estate had been sought in England and Brazil, and possibly in the Irish Free State, France and Monaco, and that no such probate proceedings were pending in any state of the United States outside the Probate Court of Cook County, Illinois; that the Guaranty Trust Company of New York was on the date of the death of decedent the mere custodian of the securities, having no interest in them, and that the estate in Cook County had assets not to exceed $250, other than the securities, and that the allowed claims against the estate were in excess of $7,500, hence the estate was and would be wholly insolvent unless it obtained the relief prayed in the bill.

There were other averments as to appellant's demand and appellee's refusal to turn over the securities, their negotiability, their fluctuating value and the danger that such value might be wiped out if the war terminated adversely to the Kingdom of Great Britain; that the Guaranty Company might attempt to institute temporary proceedings in some probate or surrogate court other than that of Cook County, thereby causing unnecessary loss, damage, costs and other expenses, and might prevent the prompt disposition or sale of the assets under order of the Probate Court of Cook County. Appellant therefore prayed that appellee be ordered to deliver over all the securities in its custody, or in the al-

ternative, that it pay over the fair market value of such securities together with damages for their detention and the costs of the proceeding. It also prayed that appellee be temporarily and permanently restrained from disposing of the securities, and from instituting any proceedings relating thereto in any court other than the Cook County one.

Subsequently appellant amended his original bill, adding the further averments that on the date of decedent's death, there was on deposit in a special account in a Chicago bank, funds in excess of $500 and less than $6,000, placed there in September, 1940, and remaining since that date, not then reduced to possession by appellant (the source of such funds is not shown nor why their existence in Chicago was not earlier known to Fisher who, as an item of the services rendered decedent for which his claim for $7,513 was allowed, alleged the "freeing, the unblocking and transfer from New York and Chicago to (decedent) in Dublin and London and elsewhere" of sums aggregating $743,000 between August, 1940, and May, 1941); that no inheritance or other taxes were or would become due from the State of New York, and offering to procure a tax waiver from the proper authorities; that under the New York laws, none of its courts had the power to distribute the assets of the estate, but that their sole power was to pay any existing debts due to New York creditors (of which the bill averred there were none), and then to remit the balance to the domiciliary administrator or executor of the estate; that New York administration would result in unnecessary expense. Appellant in his bill also offered to pay the sum of $10.43 alleged to have been claimed as custodial fees for appellee's services, although he stated that fees theretofore paid were excessive in view of the value of the securities in its charge; and that a "petition was filed in the Surrogate's Court of New York for letters of administration of the estate of said decedent by a niece of the decedent, but said petition has never been granted and no administration has ever been commenced by appointment of a representative of said estate in the State of New York," and no other action had been taken, and that court had not acquired any jurisdiction in personam over any representative of the estate or any jurisdiction in rem over any assets of decedent.

Appellant calls his action a civil action in the nature of an action in detinue, and his theory appears to be that once he obtained ancillary letters in Illinois he was entitled to possession of any assets of the estate regardless of their location, so long as he was able to get personal service on the party in possession, thereby enabling him to get a judgment in personam. He contends that ancillary administration may be granted upon assets of even trifling value, or where there are no tangible assets. We fail to see the relevance of this proposition in view of the fact that no one is here challenging the validity of appellant's appointment by the Probate Court, the only contest being as to the effect of that appointment and the powers conferred upon him by it. Since he has raised the question, however, we have deemed it advisable to call attention to some facts disclosed by the record, not strictly pertinent to the issues of this proceeding.

Appellant relies very largely upon the case of New England Mut. Life Ins. Co. v. Woodworth, 111 U.S. 138, 4 S.Ct. 364, 28 L.Ed. 379, which he asserts supports the proposition that granting of letters in Illinois was proper and cannot be collaterally attacked in this proceeding, and that he, as ancillary administrator in Illinois may recover any assets belonging to his decedent which are recoverable by action in Illinois, and that the assets here involved are recoverable by the action at bar because he is able to obtain personal service upon appellee, a non-resident corporation authorized to do business in Illinois.

We do not agree with appellant's interpretation of the Woodworth case. It held that the Illinois-domiciled husband of a New York-domiciled wife might, upon her death, obtain letters of administration in Illinois upon a showing of property belonging to her, consisting of an insurance policy payable to her, her executors or administrators, which he held in Illinois, giving him a claim as administrator against the insurer, qualified to do business in Illinois, and that being the case, sufficiently domiciled there to make its policy which created a simple contract debt, an asset there for the purposes of administration. This is no way analogous to the situation here involved.

Appellant appears to think that he stands in the shoes of decedent and holds all rights which would have been enforcible by decedent. Such is far from the case. By his grant of ancillary letters of admin-

istration he obtained only a special and limited authority to act in collecting and disposing of such personal property as the decedent left within the confines of the State of Illinois. 11 R. C. L. on Executors and Administrators, § 529; Woerner, American Law of Administration, 3rd Ed., Vol. I, § 157. Certainly the Woodworth case does not contemplate that a public administrator obtaining ancillary letters upon an allegation of property in the state at the time of a non-resident decedent's death, may thereupon require that all property belonging to his decedent in other foreign states be brought into the state for him to administer. That there are allowed claims of Illinois creditors which cannot otherwise be paid in Illinois does not enlarge his authority.

■ Appellant proceeds on the theory that a proceeding initiated in New York for ancillary administration could be and was abandoned by the petitioning alleged heir, and that thereafter the New York Surrogate's Court lost all jurisdiction over the proceeding and the assets, although its records showed that the proceeding was still pending and the published opinion of the Surrogate showed that he was holding it in abeyance pending receipt of further information necessary to a correct decision, and of course, the assets remained in New York. We cannot agree with appellant's theory. That court had assumed jurisdiction upon the filing of the petition which it stated was filed on the theory that the decedent died intestate; it was its duty to retain that jurisdiction for the purpose of administering the assets within the state or transmitting them to the domiciliary executor or administrator when his identity was ascertained. In order to do so it was necessary for the court to determine whether the decedent was testate or intestate. Due to the exigencies of the war, it may be some time before final determination may be had. In the meantime, if it appears that the delay is likely to result in loss to the estate, under the provisions of section 126 of the Surrogate's Court Act, a temporary administrator may be appointed on the application of a creditor or a person interested in the estate, and by section 127, this administrator may be authorized by the surrogate to sell such personal property as it appears to be necessary to sell for the benefit of the estate. Hence we find no basis for appellant's apprehension of loss if the assets are not re-

moved from New York and brought under the jurisdiction of the Probate Court of Cook County, Illinois.

■ We find neither authority nor reason for permitting appellant as ancillary administrator to maintain his action against appellee, a non-resident custodian of assets belonging to a non-resident alien decedent, to compel it to turn over assets which have not now and have never had a situs in the State of Illinois.

Judgment affirmed.