**MONTGOMERY WARD & CO., Inc., v. BOWLES, Price Administrator.**

No. 57.

United States Emergency Court of Appeals. Heard at Chicago Oct. 5, 1944.

Decided Feb. 12, 1945.

For former opinion, see 138 F.2d 669.

Stuart S. Ball, of Chicago, Ill., for complainant.

Nathaniel L. Nathanson, Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, General Counsel, Jacob D. Hyman, Chief Court Review Price Branch, Lester N. Salwin, and Samuel M. Singer, Attys., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

Complainant, a corporation operating more than 600 retail stores and 9 mail order houses at various points in the United States, brings this suit to attack the validity of Maximum Price Regulation No. 330 —Retailers' and Wholesalers' Prices for Women's, Girls' and Children's Outerwear Garments.[1]

The case was first submitted to us on September 23, 1943, after the Administrator had denied a protest filed by complainant against the Regulation. At that time a question arose as to whether the Administrator was required to submit to this Court, as part of the transcript of the protest proceedings, a statement of the evidence upon which he had relied in establishing the Regulation. We decided there was no such requirement.[2] After this decision complainant applied for permission to adduce additional evidence; its application was granted in part and evidence thereafter was submitted to the Administrator. After reconsidering complainant's protest upon the new record, the Administrator again denied it and the case was

[1] 8 F. R. 2209.

[2] Montgomery Ward v. Bowles, Em. App.,1943, 138 F.2d 669.

860

brought before us in the present proceeding.

By the Regulation under attack the Administrator established ceiling prices for feminine and children's outerwear garments and sought, in addition, to encourage the continued manufacture and sale of low priced garments. Although there were many variations in the prices of the garments covered by the Regulation resulting from differences in quality and style, clear cut price ranges, known as price lines, had developed in the trade for each type of garment. The Administrator found that low price lines were disappearing from the market because of a tendency of manufacturers and other sellers to drop lower priced garments and to move into higher price lines with the expectation of greater profits. In order to preserve the normal pattern of production and distribution, the Administrator developed a plan, known as the highest price line limitation, for encouraging manufacturers and others to continue in the price lines customarily handled by them. Under the plan each of the various types of garments (dresses, coats, blouses, suits, and others) was separated into categories covering different size ranges; then each retailer and wholesaler was limited in each category, insofar as garments received after the effective date of the Regulation were concerned, to price lines no higher than the highest price line in which it had actually delivered a garment in that category during March 1942. Retailers and wholesalers who had made no deliveries in a particular category were allowed to sell at the highest price line of their most closely competitive seller for the same category. The limitation was applied at the retail and wholesale levels by Maximum Price Regulation No. 330. At the manufacturing level generally similar restrictions were imposed by Maximum Price Regulation No. 287.[3] The control at the wholesale and retail levels was designed not only to encourage wholesalers and retailers to continue their normal operations, but to retain their demand for low price lines as an added incentive to manufacturers to continue production of such lines. The highest price line limitation in Maximum Price Regulation No. 330 appeared in the following language:

Section 1389.553. *"Explanation of 'highest price line' limitation.* In order that the consumer may continue to buy garments at customary price levels, this regulation provides a highest price line rule, or an over-all ceiling rule for each category. The rule is that you may not, under any circumstances, sell any garment at a higher price than the highest price line at which you delivered a garment of the same category number during March 1942. If you did not deliver any garments of the same category number during March 1942, then you may not sell a garment of that category number at a higher price than the highest price line at which your most closely competitive seller of the same class delivered a garment of that category number during March 1942."

This provision was subsequently amended so as to make the terms quoted above applicable to the Spring selling season only and to provide a different period for determination of the highest price line for the Fall season.[4] The Administrator found that sellers were unable to acquire sufficient merchandise in the very low price lines and he therefore amended this section to provide in most of the categories certain price lines which any merchant was permitted to sell, regardless of his deliveries during March 1942.[5]

During the pendency of this case, the Stabilization Extension Act of 1944 was passed by Congress, effective June 30, 1944.[6] By it, Section 2(k) was added to the Emergency Price Control Act of 1942, providing as follows: "No regulation, order, or price schedule issued under this Act shall, after the effective date of this subsection, require any seller of goods at retail to limit his sales with reference to any highest price line offered for sale by him at any prior time." Pursuant to this provision, the Administrator issued Sup-

---

[3] 8 F.R. 9122.

[4] By Amendment No. 1 it was provided that a seller's highest price line for the Fall selling season should be the highest price line in which it delivered a garment during March 1942 or during a different period which varied from one retailer to another, depending on the category and particular circumstances of the seller, but which in any case included a period of several months. 8 F.R. 11041.

[5] Amendment No. 2, issued November 25, 1943. 8 F.R. 16060.

[6] Public Law 383, 78th Cong., 2nd Sess., 58 Stat. 632.

plementary Order No. 93, effective June 30, 1944,[7] revoking the highest price line provisions of Maximum Price Regulation No. 330 and other regulations. This revocation under ordinary circumstances would render unnecessary and therefore moot any decision by this Court as to the validity of the Regulation. For the only affirmative relief which Section 204(a) of the Emergency Price Control Act empowers this Court to grant is to set aside, in whole or in part, the regulation, order or price schedule complained against. It would obviously be futile to set aside a regulation, order or price schedule which had already been revoked by the Administrator. However, the Stabilization Extension Act of 1944 also added the following language to Section 204 of the Emergency Price Control Act as a part of new subsection (e): "If any provision of a regulation, order, or price schedule is determined to be invalid by judgment of the Emergency Court of Appeals * * * any proceeding pending in any court shall be dismissed, and any judgment in such proceeding vacated, to the extent that such proceeding or judgment is based upon violation of such provision."[8] We think in view of this language that this Court is now empowered not only to entertain a complaint which seeks affirmative relief against a provision of an existing regulation or order but also one which merely seeks a declaration that a provision of a regulation or order was invalid at a time in the past when the complainant is alleged to have violated it. In the latter case Section 274d of the Judicial Code[9] authorizes this Court to declare the invalidity of the provision of the regulation or order assailed even though no other relief is or could be prayed.

There is now outstanding a preliminary injunction issued by the District Court of the United States for the Northern District of Illinois, restraining complainant from violating orders issued by the Price Administrator. From the findings of fact in that case, it appears that to some extent the injunction was issued on the basis of complainant's alleged violations of the highest price line limitation. Therefore, for the effect, if any, our adjudication will have upon the injunction proceedings against complainant, it is necessary that we, as the only Court having jurisdiction to pass upon the validity of price regulations, should adjudge the validity of the highest price line provision.

Complainant argues that the highest price line limitation provisions of the Regulation were beyond the powers granted the Administrator by the Emergency Price Control Act of 1942, because such provisions did not tend to effectuate the purposes of the Act. As we have noted, the Administrator in his study of the women's apparel industry found a strong tendency of manufacturers, as well as wholesale and retail merchants, to drop low price lines and to replace them with higher price lines. This tendency developed as a result of the abnormal demand created by the war and the fact that merchants and manufacturers expected to realize higher profits in the more expensive lines than in the less expensive. Because of the shortage of raw materials for civilian needs, the tendency in the trade to move to higher price lines necessarily resulted in the curtailment of production in the lower price lines. The problem was particularly acute in the women's and children's apparel industry because of the fact that style was such an important consideration in pricing. The importance of style made possible the use of the same fabrics in garments of different price lines, the differences in price depending on variations in cost of labor, trimmings and furnishings. It appeared to the Administrator that the practice developing in the trade was inflationary because low priced goods were disappearing from the market, compelling purchasers to spend more for clothing, and also because the higher priced goods were not necessarily more durable in proportion to their additional price. The highest price line limitation was evolved in an attempt to counteract this practice.

■■ The powers conferred by subsections (a), (c), (d) and (g) of Section 2[10]

7 9 F.R. 7574.

8 Part of section 204(e) (2), Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 924(e) (2).

9 28 U.S.C.A. § 400.

10 Sec. 2. "(a) Whenever in the judgment of the Price Administrator * * * the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum

of the Emergency Price Control Act reveal the clear intention of Congress to delegate to the Administrator broad authority to deal with and prevent practices tending to defeat the program of inflation control. It appears to us there can be no question but that the practice of moving from production and sale of low priced garments to high priced garments, found by the Administrator to be in effect and threatening to increase in the industry, had serious inflationary tendencies. The Administrator's efforts to control the ceiling prices of garments would have been offset had the practice been permitted to continue. It seems clear therefore that prior to the passage of the Stabilization Extension Act of 1944 the practice found by the Administrator in the apparel industry was one with which he was authorized to cope.

 Complainant has argued that the highest price line provision did not effectuate the purposes of the Act, because it removed competition in the higher price lines and did not prevent a merchant from dropping his lower price lines and concentrating on the highest price line which he was permitted under the Regulation. The Administrator, on the other hand, claims there is evidence in the record which indicates the highest price line provision actually suppressed inflationary tendencies and therefore proved to be effective in carrying out the express purpose of the Act.[11] There is no necessity to reach a definite conclusion as between the opposing claims. Without indicating our opinion as to what would be the effect upon the validity of a regulation if it were clearly shown to have proved unsuccessful in suppressing inflationary tendencies, we may dispose of complainant's contention because of its failure to establish the ineffectiveness of the regulation in this case. As we indicated when this case previously was before us, regulations issued by the Administrator must be presumed to be valid and the burden is on the complainant to establish the contrary.[12] In this case, no evidence was adduced by complainant to show ineffectiveness, but it relies solely upon a suggestion of circumstances which it believes conceivably might indicate partial ineffectiveness. This is insufficient to overcome the presumption of validity of the Regulation and the evidence placed in the record by the Administrator. We, therefore, must reject the contention of complainant that the highest price line provision did not effectuate the purposes of the Act.

 Complainant does not rely alone upon its contention that the highest price line provision did not effectuate the purposes of the Act, but takes the position also that the provision was not fair and equitable, as required by the Act. It bases this contention upon several grounds. At the oral argument there was some suggestion made that in many instances merchants would not be able to continue to obtain

---

prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * * "

"(c) Any regulation or order under this section may be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act. * * * "

"(d) Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he may, by regulation or order, regulate or prohibit speculative or manipulative practices (including practices relating to changes in form or quality) or hoarding, in connection with any commodity * * * which in his judgment are equivalent to or are likely to result in price * * * increases * * * inconsistent with the purposes of this Act."

"(g) Regulations, orders, and requirements under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof."

11 The record shows that between September 1943 and March 1944, commodities subject to the highest price line limitation increased in price to a lesser degree than those not subject to the limitation. According to figures prepared by the Bureau of Labor Statistics, prices of women's apparel subject to the limitation rose 5.5%, while an increase of 6.8% was noted in prices of women's apparel not subject to the limitation. Corresponding increases in prices of men's apparel were 1.7% and 2.9%.

The Administrator relies also upon evidence indicating a tendency in complainant's sales from 1941 through the first nine months of 1943 to move from low to high price lines. The Administrator concludes that this tendency would have been accelerated in the absence of the highest price line provision.

12 Montgomery Ward v. Bowles, Em. App.,1943, 138 F.2d 669.

low priced merchandise and that it would be unfair and unreasonable under these circumstances to deprive them of the right to expand their businesses to the sale of higher priced garments. We have previously mentioned that the record indicates there was a shortage of merchandise in the very low price lines and that the Administrator relaxed the limitations of the Regulation so as to deal with this problem.[13] There is no showing of a general shortage of other low priced merchandise usually dealt in by merchants affected by the Regulation. We assume if such were the fact and evidence to this effect had been produced before the Administrator, he would have again relaxed the limitations of the Regulation. But we are not called upon to decide what his duties would be in such a case. We may not judicially notice the facts necessary to support such an argument, and since there is no evidence before us to support this claim, we shall not pass upon its merits.

■ It is further contended that the Regulation was not generally fair and equitable for the reason that it restrained merchants engaged during March 1942 in selling garments in a particular category from selling in higher price lines in that category, whereas others who during March 1942 were not engaged in making sales in that particular category were permitted, under some limitation, to sell in any price line in the category. There can be no doubt that in reaching a conclusion as to what is to be regarded as generally fair and equitable, this Court must consider all the circumstances which confronted the Administrator when he was called upon to set up his program. Perhaps if consideration were not required to be given to the public interests as they existed in a period of wartime inflation, it would be granted that the withholding from merchants with established price lines of the right to go into higher lines was unfair and inequitable. But where abnormal demands in the market are forcing prices to rise and Congress has called upon the Administrator to direct his efforts towards maintaining a stable economy, the problem of what is fair and equitable must be viewed from a different perspective. In such perspective, it well may be found necessary to subordinate to public needs some of the rights and privileges usually accorded to industry, which under different circumstances would be respected. There is no requirement that a regulation to be fair and equitable must maintain exact equality between the rights and benefits of those subject to it where they are differently situated and the problems of price control apply to them differently.[14] Moreover, the determination as to whether a regulation is generally fair and equitable cannot be made by considering a single aspect of the regulation or of a person subject to it, but an appraisal must be made of the effect of the regulation in all its aspects.[15]

■ In light of the principles stated, we look to the form of control imposed by the highest price line provision. It is apparent that insofar as merchants were limited in a particular category to the highest price line in which they had dealt during March 1942, the Regulation merely continued trade practices which had been established before its issuance. So far as newcomers to any particular category were concerned, the Administrator provided that their highest price line should be the highest price line in that category of their most closely competitive seller. In this form merchants would not be foreclosed from selling in any category not previously handled by them, and established merchants were assured that newcomers would not be given an unfair advantage once they entered a chosen field.

Complainant has adduced no evidence and has made no claim of hardship caused by the Regulation. On the contrary, like many enterprises during wartime, it apparently enjoyed a substantial increase in sales volume. Considering the serious inflationary character of the trend in the industry which the price line limitation was designed to prevent and looking at the industry's circumstances on the whole, including the benefits which merchants apparently sustained as the result of swollen, wartime demands, we cannot hold that the Regulation was unfair and inequitable simply because merchants were confined to the price lines usually handled by them.

Complainant claims unfairness and inequitable treatment resulted under the Regulation because if a delivery was not made

---

[13] See Amendment No. 2, issued November 25, 1943. 8 F.R. 16060.
[14] United States Gypsum Co. v. Brown, Em.App.,1943, 137 F.2d 803, certiorari denied 320 U.S. 799, 64 S.Ct. 427.

[15] Cf. Chatlos v. Brown, Em.App.,1943, 136 F.2d 490.

in March 1942 of a garment of any particular category within the highest price line handled (or offered for sale) by a merchant, that merchant would be forced to discontinue future sales of that grade merchandise in that category, provided that during the base period he happened to have made a delivery within a lower price line in the same category, whereas his competitor who had made a delivery during March 1942 in the highest price line which it handled would suffer no such result. It is urged that the Regulation was discriminatory, since competing merchants engaged in selling identical price lines were subjected to different limitations.

In the form in which the Regulation was drawn there can be no doubt but that merchants in the same situation were subjected to different price controls. Let us assume two merchants in March 1942 were engaged in selling garments from the same price lines; one made a delivery in his highest price line during that month, the other did not. In such event the former would be permitted to continue his business unimpaired as to his previous price lines, whereas the latter would be required to eliminate from his business sales in all lines above the highest in which he had made a delivery. The discrimination is obvious and was brought about not by reason of any scientific approach to price control, but by what may have been a turn of the wheel of chance. Failure of a merchant to deliver in March 1942 from his highest price line might have occurred because of weather conditions in his location; because the style of garments which he handled in his highest price line during that month chanced not to meet with favor; because he was temporarily out of stock in his highest price line; because of inadequate advertisements or displays; or any number of other misfortunes. We may not assume that failure to make a delivery in a price line for such reasons would, in the normal course of events, result in his abandonment of the price line. Certainly in many cases it would not. Nevertheless the Regulation forced such abandonment, while at the same time more fortunate merchants in the nation suffered no such result in the conduct of their businesses.

The Administrator apparently takes the position that such a situation would not frequently arise and that, if it did, the discrimination would not be grievous. He considered the month of March to have been a period of heavy demand and large sales volume in women's and misses' Spring apparel, and he assumed that "all sellers would, during the course of the month, sell at least one garment in every price line in which they customarily did a significant volume of business." We do not commit ourselves to the view that a discrimination between equals is not fatal to a regulation simply because it will not frequently occur or because it may not be such as will be particularly damaging. But if such a view were to be accepted as correct, we could not agree with the Administrator's assumption of facts, at least in the absence of evidence to support it. We have indicated some of the circumstances which might arise to prevent sales and deliveries from highest price lines during March 1942. In addition, the record before us contains evidence which tends to indicate that complainant, whose business is generally known to be of large volume and frequent turnover, failed during March 1942 to sell in some of its stores from certain of their highest price lines. The Administrator contested the evidence as it related to some stores, but not others. If an enterprise of the character of complainant's failed to make sales in even a few of its stores, it can hardly be doubted that many other concerns, whose business was of less volume and slower turnover, suffered lack of such sales during the same month. We think it is likely that in many instances merchants throughout the United States did not deliver garments from their highest price lines during March 1942, and that this well might have occurred regardless of the amount of business the merchants usually did in such price lines. For these reasons we think Maximum Price Regulation No. 330, before the issuance of Supplementary Order No. 93, was invalid in its application to merchants who because of their failure to make a delivery of garments during March 1942 were denied the right to make future sales of garments in a category in price lines which they were actually engaged in selling during March 1942, or in price lines below the highest price line which they were actually engaged in selling in that category during March 1942.

This Court will enter a judgment in accordance with the conclusions stated. Counsel for the respective parties are directed to submit within ten days suggested forms of such judgment.