**BOWLES, Price Administrator, v. TRUNZ, Inc.**

**Civil Action No. 5301.**

District Court, E. D. New York.

July 24, 1945.

Paul L. Ross, Callman Gottesman, and Isadore Fried, all of New York City (by David A. Steinbock, of New York City), for plaintiff.

Patterson, Eagle, Greenough & Day, of New York City (by Aloysius F. Schaeffner, of New York City), for defendant.

KENNEDY, District Judge.

On April 27, 1945, the plaintiff administrator filed a complaint in equity against the defendant alleging that during the period between January 29, 1945 and March 3, 1945 the defendant had violated Maximum Price Regulation No. 574, which concerns itself with the prices paid by slaughterers for cattle and calves.

The defendant conducts a slaughtering plant at 406 Allen Street, Elizabeth, N. J. The company was organized in 1927. It took over a business conducted since 1904 by the father of the president of the corporation. Prior to January 12, 1945 the defendant had been engaged exclusively in the slaughter of hogs. At the request of the Army Quartermaster Market Center it began on January 12, 1945 to purchase and slaughter cattle, because beef is an essential ingredient of various manufactured and processed products needed by the armed forces.

Maximum Price Regulation No. 574, which is invoked by the plaintiff, was issued on January 29, 1945, and became effective on the same date. It is based upon the Emergency Price Control Act of 1942, Act of January 30, 1942, 56 Stat. 23, as amended, 50 U.S.C.A.Appendix, § 901 et seq., the Stabilization Act, Act of October 2, 1942, 56 Stat. 765, as amended, 50 U.S.

C.A.Appendix, § 961 et seq., and Executive Orders Nos. 9250 and 9328, 50 U.S.C.A. Appendix, § 901 note. The regulation is designed to induce slaughterers to keep within price ceilings on purchases of live cattle and calves. It prescribes penalties for violations, and it also makes available to the administrator the remedy by injunction in order that the regulation may be enforced.

Substantially, the regulation attempts to prevent inflation by a method which I now rather sketchily summarize. The United States is divided into zones or markets. To each zone or market is assigned what is called an "overriding ceiling price." This price the slaughterer must not exceed in the purchase of live bovine animals. There is no claim by the plaintiff that this defendant paid more for the live cattle than the overriding price, and no further consideration need be given this phase of the regulation.

In addition to the overriding ceiling price, the regulation requires that slaughterers shall conform to a further limitation on the price which the beef is found to have cost them after the cattle have been slaughtered. They must report periodically over an accounting period chosen by them what their costs were for various grades of beef, and compare these with the maximum permissible cost under the regulation. The form of report (D S – T – 55) is such that the slaughterer sets out the yielded weight of beef in each grade. To this weight is applied a "yield factor." The application of this factor gives the "calculated live weight." Using the "top price of range" the reporting slaughterer then arrives at the maximum permissible payment in each grade, and the total permissible payment.

For the accounting period from January 29, 1945 to March 3, 1945, the defendant, according to the regulation, should have paid a total of $68,783.97. It received a freight credit of $2,149.33, and, as it was entitled to do, applied this against the total purchase price of cattle during the period, which was $76,415.16. It thus develops that the defendant actually paid $74,265.83 for its cattle against a maximum permis-

sible payment of $68,783.97. On the basis of these calculations defendant had paid $5,481.86 more than the regulation allowed. The amount of the overage is roughly 6½% of the total amount paid for the cattle on the hoof.

The defendant, as I have said, was within the overriding ceiling price. But after the cattle had been slaughtered, the total price of the beef exceeded the ranges to which the defendant was required to conform. (Maximum Price Regulation No. 574, sec. 13C.)

That the defendant violated the price regulation is beyond doubt or dispute. Its own report establishes this. Because it is a violator the plaintiff now asks that it be enjoined against further violations.

The defendant offers several excuses. It says that although on its face the regulation is simple, and the calculations required by the report are elementary, nevertheless it is not easy to comply with the regulation, even in good faith. Defendant points out that it purchases cattle in Chicago, that if they are delayed in transit the animals shrink, and that this results in a higher price per hundred weight after the cattle have been slaughtered than would have been the case had this shrinkage not occurred. No doubt this is true. But the regulation itself is so devised that allowance is made for this, which allowance is included in the freight credit, since presumably the amount of shrinkage should bear some rough proportion to the distance and cost of transportation.

Defendant also points out that the maximum permissible payment reflected in its report (D S–T–55) is based in part upon the classification of the beef, and that this injects another imponderable into the apparently simple calculations required. But I am told that this classification is carried on at the slaughtering plant, and that in the event of a procedure which it thinks improper, the defendant has a remedy, not apparently invoked here.

■ Although it disavows any such intention, I think the defendant's real argument is that the fixation of ceiling costs to slaughterers of beef is not an easy process, and that the regulation invoked by the

plaintiff has not worked out in practice. I can take no cognizance of any such argument as that. I must take the regulation as I find it. An exclusive remedy is provided for slaughterers who believe that price regulations are inequitable or unworkable—a remedy that is not within the jurisdiction of a District Court to grant. As I understand the law, slaughterers must comply with these regulations, or fail to do so at their peril.

But a different question is presented so far as the granting or withholding of injunction is concerned. In Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L. Ed. 754, the decision turned upon the question whether, under circumstances very similar to those at bar, a Federal District Court sitting in equity must automatically enjoin a defendant upon a showing that maximum price regulations had been violated. The District Court had refused an injunction because it would have been unjust to the petitioner and not in the public interest. The Court of Appeals for the District of Columbia reversed, holding that the Emergency Price Control Act required the issuance of an injunction as a matter of course, once violations were found. The Supreme Court reversed the Court of Appeals. It pointed out that courts must, in dealing with the statute, be careful to take into consideration the public interest, which Congress has sought to protect. Nevertheless, in cases such as this, they must also use the sound discretion which guides the determinations of courts of equity, and must keep in mind that the injunctive process was designed to deter, not to punish.

It is true, as pointed out by the plaintiff, that although Maximum Price Regulation No. 574 is comparatively new (having been promulgated on January 29, 1945) the price ranges which it permits are actually higher than those prevailing in October, 1943, and for concerns which have been in business since the latter date it would normally be expected that compliance would not be difficult. However, in the particular case under consideration the defendant did not commence slaughtering beef until seventeen days before this particular regulation became effective. The answering affidavits point out that the defendant corporation, until the commencement of the case at bar, has never been found in violation of any of the regulations with which it was required to comply. It, and its predecessor, have been engaged in business since 1904. There is, therefore, a strong likelihood that the violations complained of can be ascribed in part to the fact that the defendant made mistakes. It certainly complied with the regulation in part, and the percentage of costs above the maximum permissible costs is not so large that conscious violation can be presumed.

What I must decide, therefore, is whether the issuance of a temporary injunction in this case would serve a useful purpose as a deterrent, or would merely punish the defendant for mistakes that are perhaps innocent. On this record I cannot say that a drastic remedy is called for. I think that the interests of justice and the enforcement of the regulation will be served by denying the application for a temporary injunction, without prejudice, to the renewal of the application if further violations occur, the case in the meantime to remain on the docket. See Hecht Co. v. Bowles, 321 U.S. 321, 328, 64 S.Ct. 587, 88 L.Ed. 754.

It is quite clear to me that these price regulations must be enforced, and that no slaughterer can be excused for violating them because he thinks he could have made a better one. It is also clear to me that if it becomes unprofitable for the slaughterers to operate under these regulations, and they choose not to seek relief in the Emergency Court, they are without any defense at all if they choose to flout the regulations. But strong as these considerations are, they are outweighed in the case at bar by the natural reluctance of a Court of Equity to visit upon what may be an unconscious violation the same consequences as upon a deliberate and conscious attempt to circumvent the law.

What I have said above is, I believe, consistent with several opinions recently rendered by Judge Rifkind in the Southern District of New York. Bowles v. Izakowitz et al., D.C., 66 F.Supp. 156; Bowles v. Bernstein, Inc., D.C., 66 F.Supp. 361;

Bowles v. Schatten, Inc., D.C., 66 F. Supp. 362; and Bowles v. Fleischer, Inc., D.C., 66 F.Supp. 362. I recognize that there is no exact analogy between this case and those decided by Judge Rifkind, but I believe all are substantially similar and should be treated in the same way.