**BOWLES, Price Administrator, v. WEISS.**

**SAME v. ECKERT et al.**

**Civil Actions Nos. 4463, 4464.**

District Court, W. D. Pennsylvania.

March 13, 1946.

Thomas F. Garrahan and Samuel Chertoff, both of Pittsburgh, Pa., for plaintiff.

Benjamin H. Rosen, of Rosen & Rosen, all of Pittsburgh, Pa., for defendants Weiss.

J. Roy Van Kirk, of Pittsburgh, Pa., for defendants Eckert.

WALLACE S. GOURLEY, District Judge.

This is a suit brought to restrain the defendants from the violation of Maximum Price Regulation No. 574, as amended, issued and made effective January 29, 1945, as adopted by the Office of Price Administration pursuant to the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix § 901 et seq.

It is, therefore, necessary to first consider the provisions of the preamble of Maximum Price Regulation No. 574:

"That so far as practicable, the Price Administrator has advised and consulted with representative members of the industry which will be affected by said Regulation. In the judgment of the Price Administrator, the maximum prices established by this Maximum Price Regulation are and will be generally fair and equitable, and comply with the requirements of the Emergency Price Control Act of 1942, as amended, and Executive Orders Nos. 9250 and 9328, and will effectuate the purposes of said Acts and Executive Orders."

Maximum Price Regulation No. 574 is entitled Live Bovine Animals (Cattle and Calves).

Article I. This Regulation establishes overriding ceiling prices for live bovine animals (cattle and calves). In addition, the Regulation establishes maximum amounts which slaughterers may pay for all cattle slaughtered during any accounting period. It also authorizes the Administrator to issue orders establishing the maximum percentage of good and choice cattle which slaughterers may slaughter or deliver as meat during an accounting period.

Article II. This section provides that regardless of any contract, agreement or other obligation, no person shall sell or deliver, or negotiate the sale of any live bovine animals, and no person in the course of trade or business shall buy or receive, or negotiate the purchase of any live bovine animals at a price higher than the overriding ceiling price fixed by this Regulation for such bovine animals. Also that no person in the course of trade or business shall pay for live cattle slaughtered during any accounting period an amount higher than the maximum amount fixed by this Regulation for such live cattle slaughtered during such accounting period, and no person shall agree, offer, solicit or attempt to do any of the foregoing.

Article II, Section B. No person shall evade, directly or indirectly, the price limitations or other provisions of this Regulation.

Article III, Section 9. This section sets forth the method of mathematical calculation to determine the maximum amounts which slaughterers may pay for all cattle slaughtered during any thirty day accounting period.

Separate actions were filed by Chester Bowles, Administrator, Office of Price Administrator, against Irwin Weiss, Civil Action 4463, and George Eckert and Albert Eckert, partners doing business as Eckert Brothers, Civil Action 4464, for injunctive relief to compel the defendants to comply with Maximum Price Regulation No. 574, which would prevent the defendants from paying for live cattle an amount higher than the amount provided by such regulation.

In substance, the end sought to be achieved by the Regulation was to get a minimum graded percentage yield out of each carcass dressed by the defendants. It was on the basis of the percentage yield of a particular grade of beef that the permissible price which could be paid for the live animal was established.

If, for instance, a slaughterer was able to get the percentage yield of Grade A beef, which was 58%, then the price which

he had paid for the live animal complied with the Regulation. If, however, his yield in that same grade was less than 58%, then it automatically followed that the price he had paid for his cattle, even though it was below the ceiling price in the district which governed the maximum price that could be paid, was higher than the permissible established by the Regulation.

Each month, each slaughterer or defendants had the obligation under said Regulation to file Form DS–T–55, showing actual cost of his cattle, percentage of yield for the various grades, and the permissible price as worked out under the formula set up in the form itself.

The following table will show, as to each defendant, the permissible prices, the actual payments, and the approximate percentage of over-payments as drawn from the Forms DS–T–55:

The defendants admit the Regulation has been violated but argue that the court in its discretion, with due consideration given to the equities which exist, should refuse to grant the injunctive relief requested.

It is claimed that the defendants are confronted with situations where wise traders fill the cattle with water prior to sale, or with feed, so that it is difficult for slaughterers to estimate closely how the cattle will dress. Also, that cattle are purchased from various persons and during shipment or transportation, many conditions arise which make it impossible at the time of purchase to accurately or definitely compute the dressed weight so that compliance can be made with the Regulation.

The Government answers this contention and maintains that it would be possible for a slaughterer to ascertain weekly or at least bi-monthly whether the weights are

| Defendant | Period | Highest Permissible Price | Actual Price Paid | Amount of Overpayment |
|---|---|---|---|---|
| A. Irwin Weiss C.A. 4463 | Apr., 1945 | $16,740.66 | $17,664.32 | $ 923.66 |
| B. Eckert Bros. C.A. 4464 | Apr., 1945 | $24,717.44 | $25,900.95 | $1183.51 |

The only evidence as to the defendant Weiss was for during the month of April, 1945, which I have above referred to under "A", and as to the defendant Eckert Brothers, the Government in its pleading limited its complaint to the month of April, 1945, which I have referred to under "B".

However, the court was concerned in each case as to whether the action of either defendant was persistent, since this fact was one of material importance, in the final determination, as to whether the injunctive relief should be granted.

As to the defendant Eckert Brothers, it appears that said defendants failed to comply with the Regulation during the months of May and July, 1945, in addition to the month of April, 1945. The amount of overpayment during said months being as follows:

checking out in accordance with the Regulation, and thereby ascertain if there is a danger of noncompliance during the monthly period. Also, if the slaughterers ascertain this fact or learn that they are close to the line, proper precaution could then be taken for the entire monthly period.

The Regulation originally was a war time measure, and during this period of post-war economic adjustment, it maintains its importance and value in the battle against inflation. It provides for a course of conduct for slaughterers which was best calculated to provide for the even distribution of the necessities of life to the civilian population. The course of conduct prescribed is to be followed not only by individual slaughterers but by all his competitors, regardless of their position in business. It would, therefore, appear at

| Defendant | Period | Highest Permissible Price | Actual Price Paid | Amount of Overpayment |
|---|---|---|---|---|
| Eckert Bros. | May, 1945 | $12,311.58 | $13,634.92 | $1323.34 |
| Eckert Bros. | July, 1945 | $12,830.17 | $13,294.61 | $ 464.44 |

first blush that under no circumstances should a slaughterer be excused or permitted to deviate from the prescribed method of doing business, because to do so would only operate to produce a chaotic condition in the purchase, sale and distribution of meats, and bring about an inflationary condition in this economic field.

■ First consideration must, therefore, be given to the argument of counsel for the Government that the Regulation can be complied with by a slaughterer who exercises reasonable effort to keep his purchases within the provisions thereof during any 30 day period. Although the court is not bound by the interpretations of the Office of Price Administration in connection with any Regulation, such interpretations or the possibility of performance are entitled to great weight as long as the conclusion reached does not distort the plain intendment of the Act. Bowles v. Nu Way Laundry Co., 10 Cir., 144 F.2d 741; Bowles v. Ammon, D.C., 61 F.Supp. 106; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, at page 325, 53 S.Ct. 350, 77 L.Ed. 796.

■ Also in determining whether an injunction should issue or if the parties have violated the Regulation, it is not competent for the court to consider the fairness or the equity of any regulation since any equitable jurisdiction to test the validity of a regulation or its fairness is exclusively committed to a single court created by the Emergency Price Control Act, Section 204(c), and specifically authorized, subject to review by the Supreme Court, to adjudge the validity of any regulation, and to set aside or annul the same. Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

■ If the maximum prices permitted under said Regulation do not afford a sufficient margin for profitable operation by a slaughterer, or if the Regulation is incapable of compliance, the matter would, no doubt, be so considered by the Emergency Court of Appeals. However, this court even under its equitable powers is without jurisdiction to interpret the reasonableness or soundness of the Regulation. Also, regulations issued by the Administrator are presumed to be valid, and the reasonableness thereof is entitled to little or no consideration by the district court. Heinz et al. v. Bowles, Em.App.. 149 F.2d 277; Bowles v. Hurwitz, D.C., 58 F.Supp. 1; Armour & Co. v. Bowles, Em.App., 148 F.2d 529; Bowles v. Swift & Co., D.C., 56 F.Supp.679; Montgomery Ward & Co. v. Bowles, Em.App., 147 F.2d 858.

■ The court has kept predominant in its mind the claim of the defendants that the granting of an injunction will have a disastrous effect upon the slaughtering business, and the additional difficulty of complying with the Regulation. Also, consideration has been given to the rule of law that violation of a regulation of the Office of Price Administration does not, ipso facto, require injunctive relief, but the court may in the exercise of its equitable discretion find that some other order less drastic is appropriate and in that regard courts, in coordination with the administrative agency, have a public duty commensurate with congressional policy and the public interest. Bowles v. Nu Way Laundry Co., 10 Cir., 144 F.2d 741: Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

■ The court in the exercise of its discretion is also bound to proceed in the light of the large objectives of the Act, and the standards of public interest, not the requirements of private litigation, measures the propriety and need of injunctive relief. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

■ A writ of injunction can never be used to punish for past offenses, but it should be used only to stop existing or threatened violations. Consideration should therefore, be given as to whether the acts were wilfully or innocently done, will they be repeated, will irreparable injury come to the public, or will the interests of the public be best served with some other form of relief. Bowles v. Swift & Co., D.C., 56 F.Supp. 679; Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587; Walling v. Shenandoah Dives M. Co., 10 Cir., 134 F.2d 395; Bowles v. Carnegie-Illinois Steel Corp., 7 Cir., 149 F.2d 545; Brown v. Conner, D.C., 63 F. Supp. 315, and Bowles, Price Administrator, v. Hall and Bowles v. Holliday, D.C., 62 F.Supp. 486.

The court has made an exhaustive research of the interpretations which have been made of the Regulation in other ju-

dicial districts, said question never having been decided in this district, and it has been found that a considerable conflict of authority exists.

The following cases hold that injunctive relief should not be granted under circumstances such as are before the court for consideration unless it is proved:

(a) The slaughterer has not made an earnest effort to comply with the Regulation.

(b) The actions of the slaughterer showed an utter disregard of the Regulation and unwillingness to exercise the care and precaution required.

(c) There is probable cause existing that the slaughterer will allow a recurrence of the violation.

(d) There has been an intentional or careless and reckless disregard of the Regulation. Bowles, Administrator, v. Albert Glauser, Inc., D.C., 61 F.Supp. 428; Boyles v. Bonne Terre Farming & Cattle Co., D.C.E.D.Mo. (no opinion for publication and, hence, no legal reference); Bowles v. Izakowitz, D.C.S.D.N.Y. 66 F. Supp. 156; Bowles v. Trunz, D.C.E.D. N.Y., 66 F.Supp. 363.

However, it has been held in the following cases that injunctive relief should be granted under the circumstances such as we now have for consideration, since the provisions of said Regulation prescribed a course of conduct for slaughterers which was best calculated to provide for the even distribution of the necessities of life to the civilian population. Also, to excuse deviation from this prescribed method of doing business can only operate to produce a chaotic condition in the purchase, sale, and distribution of meats, and that the granting of an injunction would merely compel a careless slaughterer to adhere to the prescribed method of conducting his business. Bowles v. Sneider et al., D.C., 62 F.Supp. 916; Bowles v. Jones, D.C.W. D.K. (No opinion for publication and, hence, no legal reference), and Bowles v. Bernstein, Inc., D.C.S.D.N.Y. (No opinion for publication and, hence, no legal reference).

It is admitted by the Government that the failure to comply in this case was not willful and that the defendant has acted in good faith, but every person during this period of economic readjustment, as in time of war, should be willing to suffer hardship, inconvenience, and unlimited responsibility in his or her own business or private life to keep from growing the giant monster, "inflation." What good is a greater profit in business if inflationary values are created thereby?

I believe that the defendant and other persons similarly situated could comply with this Regulation during each 30 day period if the slaughterer would make it his business to ascertain at the end of each business week whether his weights are checking out as provided by the Regulation. It should take not more than an hour each week to compile the necessary data to gain the information required, and certainly that is not asking an individual to do more than his part in the battle against inflation. If it is found that the dressed weight is less than the percentage required, then the slaughterer can take reasonable precaution to correct the situation during the ensuing week. Prevention is by far greater than cure, and forewarned is forearmed.

It is the desire of this court to cooperate with the administrator in every way possible to assist in the enforcement of the regulations and to thereby curb inflation, and under no circumstances would I encourage resumption of the violations because to do so would amount to judicial modification of clearly announced congressional policy.

However, the defendants impressed me that they were willing to try and comply with the Regulation, and, according to the complaints, no violations have occurred since the effective date of the Act on January 29, 1945, other than during the month of April, 1945. However, in the presentment of the testimony the defendant, Eckert Brothers, failed to comply with the Regulation during the months of May and July, 1945, in addition to the month of April, 1945. Therefore, the court can assume that during a more than reasonable trial period the defendants have complied with the Regulation.

I do not see, therefore, how it would be presently to the public interest to issue the injunction, because to do so would be unjust to the defendants and no useful purpose would be gained. An injunction under the circumstances as they now exist would have no effect by way of insuring better compliance in the future. Although the defendants complain that it is difficult to comply, it is apparent that they are complying or the matter would have been called to the attention of the court.

The Government can keep informed from month to month as to whether the defendants have continued to comply with the Regulation since Article 10 of Regulation No. 576 provides that not later than the 15th day of each month following the end of each accounting period, each slaughterer shall mail by registered mail, with return receipt requested, to the regional office of the Office of Price Administration for the region in which the place of business is located:

a. A copy of Form DS-T-55 Revised, which is the claim for cattle slaughter payments under Revised Regulation No. 3 of the Defense Supplies Corporation, which is filed for subsidy payments for all cattle slaughtered during each 30 day period, which shows the slaughterers' total expenditures for cattle purchased, and all the information which is necessary to ascertain if the cattle dressed out from their live weight as provided by the Regulation.

No deceit or fraud can, therefore, be used by the defendants or any other slaughterer, and it would be merely procedural for the administrator to present said facts to the court for appropriate consideration if the circumstances justified such action.

It does not appear that the actions of the defendants in failing to comply with the provisions of said Regulation were willful.

I believe that when the violations occurred in the instant cases, the defendants did not take practicable precautions to comply with the Regulation. The best evidence of this fact is that each of them has so complied since the failure to do so was called to their attention.

Without commenting more, the court finds that each of said defendants has violated the Regulation in that more was paid for live cattle than the amount permitted by such Regulation.

This court is of the opinion, however, that circumstances do not presently exist which would justify the granting of injunctive relief, and the relief prayed for by the Office of Price Administration against each of the defendants is, therefore, denied at this time. However, the court does not believe the proceedings should be dismissed, and it, therefore, will be ordered that the Clerk of Courts retain said cases on the court docket, with the right given to the Administrator of the Office of Price Administration, on reasonable notice being given to either or both of the defendants, that violations of the Regulation have been resumed, to again apply to the court for appropriate relief, at which time additional and appropriate consideration will be given the facts which are presented.

An appropriate Order will be filed with this opinion, and the defendants will be directed to pay the costs of each proceeding, which have accrued to date.