BOWLES, Adm'r, Office of Price Administration, v. SWIFT & CO. et al.

Civil Action No. 391.

District Court, D. Delaware.

July 31, 1944.

680

John P. Le Fevre, District Enforcement Atty., of Dover, Del., Robert C. Barab, Enforcement Atty., of Wilmington, Del., Werner Ilsen, Regional Enforcement Executive, and Paul L. Ross, Regional Litigation Atty., both of New York City, and Albert I. Schmalholz, Enforcement Atty., of Brooklyn, N. Y., for plaintiff.

C. A. Southerland and William Poole (of Southerland, Berl & Potter), both of Wilmington, Del., for defendant Swift & Co.

James M. Tunnell, Jr., of Georgetown, Del., for defendants Eagle Poultry Co., Millsboro Poultry Co., and Stockley Poultry Co.

James M. Tunnell, Jr., of Georgetown, Del., and Milton E. Sahn, of New York City, for defendants H. & H. Poultry Co. and Acme Poultry Corporation.

LEAHY, District Judge.

1. Defendant Swift & Co. is a processor in Delaware of large quantities of live poultry. OPA, after investigating one plant of Swift & Co., found defendant had purchased 403,487 pounds of poultry from January 21 to February 17, 1944, from certain "live poultry dealers" who, it is claimed, had purchased the birds from growers. The affidavits shows that the poultry was purchased at the farms of the growers, paid for at farm weights, and transferred to defendant's plant, where the poultry was sold by the dealers to defendant at ceiling prices based on farm weights—at least ¾ of a cent per pound overpayment—plus an additional varying charge of ¾ of a cent to one cent per pound for hauling or trucking charges. The violations charged are: (1) The purchases from dealers at farm weights were more than defendant should have paid for the poultry it received and (2) the amount paid for hauling or trucking was illegal. Sec. 1429.19 provides for specific maximum prices at which poultry may be purchased, i.e., every locality in Delaware has its own maximum price for live poultry. Sec. 1429.20 provides: "The maximum base price for live poultry items shall be the maximum base price *at the place where the seller parts with physical possession of such live poultry items. The weight of such poultry items shall be determined at the time when the seller parts with physical possession.*" (Emphasis supplied.) Sec. 1429.5 provides that the maximum price "shall not be evaded * * * by way of * * * transportation or other charge * * *."

OPA contends that defendant should have paid the ceiling price for live poultry at the place where the dealers actually transferred physical possession of the birds—namely, the prevailing ceiling price at the place where the defendant maintained its processing plant.

While the facts are tacitly conceded by defendant, it nevertheless contends that there has been no violation of the Act or, if the Act has been violated, the violation is of a trivial nature and was made in the utmost good faith. Upon the basis of this contention, it is argued that the plaintiff is unable to show that immediate and irreparable injury is threatened. The latter argument is untenable. Sec. 205(a) of the Act, 50 U.S.C.A.Appendix § 925(a), was not intended to provide procedures for protection of private rights; the purpose of the statute was to carry out the policy of Congress in attempting to prevent inflation. Where an injunction is authorized by statute to protect the public interest, it is enough if the statutory conditions are satisfied and it is not necessary to show that irreparable injury will result. If the statutory conditions for injunctive relief are made apparent, the injunction issues without further considerations. Henderson v. Burd, 2 Cir., 133 F.2d 515, 146 A.L.R. 714; Brown v. Hecht Co., D.C., 49 F.Supp. 528; cf. Securities and Exchange Comm. v. Jones, 2 Cir., 85 F.2d

17; Securities and Exchange Comm. v. Torr, 2 Cir., 87 F.2d 446; United States v. Adler's Creamery, Inc., 2 Cir., 110 F.2d 482, certiorari denied 311 U.S. 657, 61 S. Ct. 12, 85 L.Ed. 421; American Fruit Growers v. United States, 9 Cir., 105 F.2d 722; Interstate Commerce Commission v. Consolidated Freightways, D.C., 41 F. Supp. 651, 656; Fleming v. Salem Box Co., D.C., 38 F.Supp. 997, 998; Interstate Commerce Commission v. All American Bus Lines, D.C., 22 F.Supp. 525, 526.

 Undoubtedly, plaintiff has made a prima facie case that defendant paid farm weight prices plus a hauling charge in violation of the statute. In the recent case of Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 42, in considering the propriety of a preliminary injunction issued by the district court Judge Kerner said: "The court is not required to finally determine the issues of law or the issues of fact involved in the case. There need be only evidence tending to make out a prima facie case. From our examination of this record we believe there was evidence before the court having a reasonable tendency to make out a prima facie case. Under such circumstances, the question is whether the court, having the discretion to grant or refuse the preliminary injunction, abused its discretion." See, too, Bowles v. Federal Poultry Corp., 56 F. Supp. 675. A prima facie case having been established here, the court has power to issue the preliminary injunction. The sole question is whether it should do so in the light of the defense urged.

 After the complaint was filed in the case at bar, Sec. 1429.21(a) of Regulation 269 was amended by Regional Order G3, issued on April 26, 1944. Under the amended regulation, a hauling or trucking charge may be collected from a processing plant that purchases live poultry. This amendment presently permits, in substance, the doing of one of the acts which the plaintiff seeks to enjoin. The effect of the amendment is to add a differential of approximately a cent and a half per pound to the ceiling price which may be paid to live buyers. In United States v. Johnson, D.C.Del., 53 F.Supp. 167, I held that the statute creates the offense; and any person who violated a pre-existing regulation which is no longer in effect at the time of indictment remains amenable to prosecution. This view was later affirmed by the Supreme Court in United States v.

Hark, 320 U.S. 531, 64 S.Ct. 359. The ratio of the rule is that a crime has been committed, and unless a legislative pardon issues prosecution may still continue. A prayer submitted to a court of equity to issue a preliminary injunction against violation of a regulation which has been amended after the institution of suit, and the effect of which is to legalize the very thing plaintiff seeks to prevent, is on a far different footing from a prosecution pressed by the government for the commission of a past crime. Bowles v. May Hardwood Co., 6 Cir., 140 F.2d 914, holds that the OPA may seek a temporary injunction for violation of ceiling prices despite the fact that a later amendment makes those prices permissible; but I find myself unable to follow the rule of that case. Equity never decrees a vain act. To enjoin a person from the doing of an act which is already accomplished is obviously irrational; there is just as much absence of reason to support an injunction where the doing of the act in futuro has become legalized by either an amended statute or regulation. Hence, that part of the motion seeking a preliminary injunction against the payment of hauling or trucking charges above ceiling price is denied.

 There remains that portion of the defense which states "that the instant case involving at the most an alleged violation of a trivial nature made in utmost good faith presents a set of facts which, as in the Hecht case, should move the court in its discretion to decline the relief sought." Only one of defendant's processing plants was investigated for purchases made within the comparatively short period from January 21 to February 17, 1944, disclosing that over 400,000 pounds of poultry were purchased during that time at prices in violation of the regulation. This may be a trivial amount involving, as defendant contends, merely 3/10 of 1% of defendant's total poultry business throughout the country; but when the corner grocer is proceeded against by the OPA and forced to comply with the Act, where the evidence indicates that he has sold two or three birds above ceiling price (as has actually been the case in this court and other courts), the illegal purchase of over 400,000 pounds of poultry is anything but a trivial violation. The existence of such a substantial violation within a period of some three weeks by one of the leading nation-wide firms calls

for critical examination by the court. The only ground for denying injunctive relief is that defendant will not be guilty of future violations by paying farm weight prices for live poultry to dealers when the prices paid should be those prevalent at the place where the dealer parts with physical possession, i.e., at the processing plants of defendant. The prima facie case demonstrates defendant's past performances in complying with the Act. Until defendant can exculpate itself at final hearing for the permanent injunction, I am compelled to grant that part of plaintiff's motion for preliminary injunction which will seek to prohibit defendant from paying over the ceiling prices for live poultry at its processing plants in Delaware.

2. The remaining defendants are Millsboro Poultry Co., Stockley Poultry Co., Eagle Poultry Co., H. & H. Poultry Company, and Acme Poultry Corporation, who are five smaller processors who operate in the Delmarva region. They, too, are charged with purchasing poultry from live dealers on weights determined at the farm instead of at their processing plants and with paying, in addition, a one cent per pound hauling or trucking charge. Defendants Stockley, Eagle and Millsboro do not deny plaintiff's charges. The plaintiff's motion for injunction as granted, in part, against defendant Swift & Co. will likewise be granted against these particular defendants.

3. Defendants H. & H. and Acme raise a question of fact. They contend that they do not buy poultry from dealers but, on the contrary, directly employ a trucker to go to the farm and purchase from growers. This contention of fact would indicate that these particular defendants hire an agent to make purchases for them at the farm and are thus justified in paying at farm weights for the birds purchased and that the fee paid to the trucker is purely for hauling.[1] With respect to the propriety of issuing a preliminary injunction against these particular defendants, it is true under Bowles v. Montgomery Ward & Co., Inc., supra, the court is not required finally to determine the issues of law or the issues of fact involved in the case before issuing a preliminary injunction. But I do not think that plaintiff has made out a prima facie case with respect to these defendants. A "reasonable tendency to make out a prima facie case" means precisely that and nothing more. The only "tendency" which would support plaintiff's motion consists of certain ambiguous records from which it is difficult to tell whether the purchases made by these defendants were from live poultry dealers or whether purchases were made directly at the farm by haulers on behalf of these defendants. I recognize that the task of administering the Act is a difficult one for OPA and that the discovery of proof for violations frequently requires extensive investigation by skilled personnel, involving large expenditures of time and money, but even a time of great emergency does not excuse a court from examining matters before it to see if the essential facts are present upon which it may predicate the injunctive process. I find, here, an absence of a prima facie case. Accordingly, the motion for preliminary injunction as to this group of defendants will be denied.

A proposed form of preliminary injunction should be submitted.

---

[1] With respect to one of the defenses urged by defendant Swift & Co., a strong argument may be made that there is no difference in substance between the "live poultry dealer" and a hauler who acts as agent for the processor; and there is much force to the contention that it is difficult to justify payment of farm weights merely because of the fortuitous circumstance that the processor makes negotiations directly with the grower. But the language of the Regulation clearly makes a distinction between the live poultry dealer and the hauler. Nothing was shown at the argument to indicate that the Administrator used the words of the Regulation other than in their ordinary meaning. Moreover, this court has no power to pass on the unfairness or inequity of the Regulation involved. Procedures are available through the Administrator to the Emergency Court of Appeals under Secs. 203(a) and 204 of the Act, 50 U.S.C.A.Appendix, §§ 923(a), 924, whereby such questions may be resolved.