**DOUDS, Regional Director of Second Region of National Labor Relations Board, v. LOCAL 294, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, A. F. OF L.**

Civil Action No. 3084.

District Court, N. D. New York.

Dec. 31, 1947.

Robert N. Denham, David P. Findling, Winthrop A. Johns, Samuel Ross, and William W. Kapell all of Washington, D. C., and John J. Cuneo, of New York City, for petitioner.

Harry Pozefsky, of Gloversville, N. Y. (John J. Walsh, of Utica, N. Y., of counsel), for respondent.

BRENNAN, District Judge.

This proceeding requires the consideration of the National Labor Relations Act (hereinafter referred to as the "Act"), as amended by Congress June 23, 1947, by the Labor Management Relations Act, 1947, and popularly known as the Taft-Hartley Labor Act, 29 U.S.C.A. § 151 et seq.

A petition has been filed in this Court under the provisions of Section 10(j), and 10(l) of the Act, in which the petitioner prays that an injunction issue restraining the respondent and its agents from engaging in activities which petitioner avers constitute unfair labor practices within the meaning of Section 8 of the Act. The respondent has filed its answer, in substance denying the commission of any activities which might be determined to be unfair labor practices, and further alleges matters in avoidance of petitioner's averments. The proceeding came before the Court through the procedural means of an order to show cause.

A considerable amount of oral evidence was offered by the plaintiff for the purpose of showing the activities of the respondent which are alleged to constitute unfair labor practices. The respondent offered no evidence in contradiction to the evidence of plaintiff's witnesses, and for all practical purposes the decision must be based upon the evidence of the petitioner, and upon the applicable law. Decision of motions made by the respondent was reserved.

The proceeding arises out of a factual situation which may be concisely described as follows: For some years Harry Rabouin has conducted an express or transportation business under the name and style of Conway's Express. The principal place of business is located at Pittsfield, Mass., with branch terminals at Rensselaer, New York, and Springfield, Mass. The business conducted consists of the transportation of freight by motor truck and trailer over public highways to various destinations in about seven different states.

Prior to September, 1947, Rabouin had leased part of its equipment to the Middle Atlantic Transportation Company located at New Britain, Conn. The leasing arrangement is complicated, but it is sufficient to say that Rabouin was paid upon a mileage and freight weight basis for the equipment so leased. The operators of such equipment were employees of Mid-Atlantic, were under its complete control and their wages were paid by that company. Rabouin's employees, that is, the operators of the Rabouin equipment, used in his own business, were members of the respondent Union, and Rabouin carried out the terms of a written instrument which is referred to as a contract, which instrument attempted to define the rights of Respondent-Union members who were employees of Rabouin. The instrument was not in fact signed by Rabouin, although it appears, as above indicated, that he complied with the obligations thereof. Prior to September 10, 1947, respondent had negotiated with Rabouin to the end that equipment leased by Rabouin should only be operated by union members. Rabouin agreed either to sell the equipment or to arrange for union operators. The arrangement was not carried out. About September 10, 1947, respondent, through its business agent, learned that Rabouin equipment leased to Mid-Atlantic had transported or was engaged in transporting freight from New Britain, Conn. to Cleveland, Ohio; the operator of the truck on that occasion not being a member of the union, and, of course, not being an employee of Rabouin. On September 10, 1947, a strike which still continues was called by respondent against Rabouin. The above statement, together with evidence of acts or occurrences performed or happening during the progress of the strike form the factual background of this proceeding.

Rabouin later filed charges with the Regional Director of the National Labor Relations Board, (hereafter referred to as the "Board"), pursuant to Section 10(b) of the Act, which charges the respondent with having engaged in unfair labor practices as defined in Section 8(b) of the Act. A complaint was thereafter served by the Regional Director upon the respondent, and this proceeding followed.

The specific charges which the petitioner claims constitute unfair labor practices may be concisely stated as follows.

1. The calling of a strike which had for its purpose to force or require Rabouin to

cease doing business with the Mid-Atlantic Company. Sec. 8(b) (4) (A).

2. The refusal to bargain collectively with Rabouin. Sec 8(b) (1) (B).

3. The demand for a closed shop agreement between Rabouin and respondent. Sec. 8(b) (1) (A).

4. The demand for the payment by Rabouin to the respondent of money for services not performed or to be performed; to-wit, an amount equal to the wages of a member of Respondent Union for the trip from New Britain, Conn. to Cleveland, Ohio, about September 10, 1947. Sec. 8(b) (6).

5. The threatening or coercion of Rabouin's employees. Sec. 8(b) (1) (A).

6. The inducing and encouraging by the respondent of employees of other employers to refuse to receive or deliver articles and materials which had been handled and transported or were to be handled and transported by Rabouin's employees and equipment. Sec. 8(b) (4) (A).

The facts as shown by the evidence require little discussion, but there arose sharp differences of opinion as to the extent of the power of the Court to grant relief herein, and the procedure to be followed in arriving at a determination as to whether or not such power should be exercised.

Since the litigants herein fail to agree as to the meaning of the statute upon which the proceeding is based, on the extent of the Court's jurisdiction, upon the relief which may be granted, and the procedure to be followed in the granting or denial of such relief reference is made to the statute itself and to the principles which must govern the decision of the disputed contentions.

Arguments addressed to the fairness or efficiency of the statute are of no value here. Congress alone has the legislative power. The courts may only construe, apply and enforce the statute in accordance with the language and intent thereof. They are not concerned with whether or not the litigants consider the statute either good or bad.

A reading of the Act under consideration leads to the conclusion that, as far as material here, Congress has defined certain activities of employers and employees as unfair labor practices, and devised a means and procedure whereby such practices may be halted. It has also provided procedure by which activities, which are charged by any aggrieved person to amount to unfair labor practices, may be prohibited or regulated during the time necessarily consumed in the ultimate determination of the facts constituting such charges. Sec. 10(j) and (l). It is with the latter procedure and sub-sections of the Act with which we are primarily concerned in this proceeding.

It is plain that the remedy proscribed takes the form of injunctive relief, and it is equally clear that the Board has the exclusive power to determine whether unfair labor practices have been committed and to issue the appropriate orders upon such determination. See Sec. 10(a) (e) and (f).

The procedural steps have been taken herein, and the Board seeks the order of this Court prohibiting the commission of such acts pending its final action and determination. We are concerned here primarily with the temporary relief which may be afforded under the provisions of Sec. 10(j) and (l) of the Act.

The primary purpose of the Act is to promote and safeguard the free flow of commerce. It is recognized that employers, employees and the public are affected thereby, and the Act must be construed in the light of their interest therein.

In this proceeding the Board has invoked the discretionary power invested by Sec. 10(j), and has complied with the mandate of Sec. 10(l), in the institution of this proceeding; it being evident from the language of the last subsection that Congress determined that unfair labor practices loosely described as boycotts were especially harmful to the public interest. The measure of the court's jurisdiction is similar in both subdivisions (j) and (l); to-wit, to grant such injunctive relief or temporary restraining order as it deems just and proper. No other grant or limitation of power is found.

Respondent contends with earnestness that the provisions of the Norris-

LaGuardia Act, 29 U.S.C.A. §§ 101–115, which substantially eliminates the granting or use of the injunction in labor disputes must be applied here, or at least the bases of irreparable injury, and lack of an adequate remedy at law must be shown before the petitioner may be granted injunctive relief. Both contentions are rejected. The relief provided is entirely statutory. The common law requirements do not apply. The statutory scheme is complete in itself.

"As the issuance of an injunction in cases of this nature has statutory sanction, it is of no moment that the plaintiff has failed to show threatened irreparable injury or the like, for it would be enough if the statutory conditions for injunctive relief were made to appear. Securities and Exchange Commission v. Jones, 2 Cir., 85 F.2d 17." Securities and Exchange Commission v. Torr, 2 Cir., 87 F.2d 446, at page 450 and see also Bowles v. Swift & Co., D.C., 56 F.Supp 679 and cases cited.

To impose the limitations of the Norris-LaGuardia Act upon the Act would be to impute to Congress an intention to grant to the Court a jurisdiction with restrictions thereon which would prevent its exercise. No evidence of Congressional intent is drawn from the language of Sec. 10(h) which specifically excludes the limitations of the Norris-LaGuardia Act from effecting injunctive relief applied for after the making of an order by the Board. This provision was carried over from the original Act, and has no effect upon subdivisions (j) and (l) which are new provisions in the amended Act. Neither does the phrase "notwithstanding any other provisions of law" as found in Sec. 10(l) indicate that Congress intended that a different statutory requirement must be applied to the jurisdiction of the Court under 10(j) and 10(l). When the Court is given jurisdiction without limitation, the Act means just that; the phrase may be considered as surplusage. Certainly, it can not be used to imply a limitation upon another subsection where the phrase is not found.

■ Since this Court has jurisdiction to render only intermediate relief, it would seem logical that something less than a finding of the ultimate facts is contempla-

ted in the Act. To hold otherwise is to subject both petitioner and respondent to two trials, for the Act plainly contemplates a trial by the Board. This Court does not decide which litigant is ultimately entitled to prevail.

■ While all of plaintiff's evidence was offered and received herein, it is concluded that such detail was neither contemplated by the Act or necessary in fact. There is nothing in the statute which would prompt the Court to depart from the recognized rule of equity that interlocutory relief may be granted upon a showing of reasonable probability that the moving party is entitled to final relief. A showing of a prima facie case for equitable relief satisfies the statute. Bowles v. Montgomery Ward & Company, 7 Cir., 143 F.2d 38, at page 42; Northwestern Stevedoring Company v. Marshall, 9 Cir., 41 F.2d 28; Sinclair Refining Co. v. Midland Oil Company, 4 Cir., 55 F.2d 42.

The requirement is the same under either 10(j) or 10(l). The provision of the latter subsection, viz., "If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States * * *," is the measure of the requirements which must exist before such officer is required to petition this Court for the authorized relief. It is not the measure of the proof required before this Court may grant such relief.

The requirements of a prima facie case are met when the factual jurisdictional requirements are shown, and credible evidence is presented which, if uncontradicted, would warrant the granting of the requested relief, having in mind the purpose of the statute and interests involved in its enforcement. Such requirement has been met in this proceeding, and petitioner is entitled to relief.

■■ There remains to be considered the type and extent of relief which is considered "just and proper" under the Act. The Court is aware of the frequent admonition that injunctive relief is not lightly granted, and that such relief looks to the future rather than the past. The Court

also appreciates that such rules are applied with different degrees of rigidity in private litigation, and when the public interest is involved. United States v. Morgan, 307 U.S. 183, at page 194, 59 S.Ct. 795, 83 L. Ed. 1211. In any event injunctive relief may only enjoin those activities which are condemned in the Act. The evidence here tends to establish acts of the respondent constituting unfair labor practices. Such acts are not isolated, but rather are deliberate, wilful and, if not continuous, at least sporadic. No evidence of respondent's efforts to alter its position in reference to such acts is offered. In addition, the Court may consider a similar proceeding instituted in this Court against the same respondent requesting relief under Section 10(*l*). The above proceeding, based upon the complaint of Montgomery Ward and Company, was instituted at the same time; the order to show cause was returnable at the same time, and the evidence was taken immediately following the trial of the instant proceeding. The decision therein is filed concurrently herewith. In fact, reference to such proceeding is contained in respondent's answer.

The conclusion is reached that the motions made by respondent should be denied, and that an order should issue restraining the respondent from the commission or continuance of the activities set forth in Paragraph "6" of the petition.

Order may be settled on three days' notice.