302 F.2d 594
 BUILDING AND CONSTRUCTION TRADES COUNCIL OF the METROPOLITAN DISTRICT et al., Respondents, Appellants,
v.
Bernard L. ALPERT, Regional Director of the First Region of the National Labar Relations Board, Plaintiff, Appellee.
 No. 5926.
 United States Court of Appeals First Circuit.
 May 10, 1962.
 
 Henry Wise, Boston, Mass., with whom Robert L. Wise and Wise & Wise, Boston, Mass., were on brief, for appellants.
 Julius G. Serot, Asst. General Counsel, with whom Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Stanley A. Mestel, Attorney, were on brief, for appellee.
 Before HARTIGAN and ALDRICH, Circuit Judges, and CAFFREY, District Judge.
 HARTIGAN, Circuit Judge.
 
 
 1
 This is an appeal from an order of the United States District Court for the District of Massachusetts granting a petition for an injunction filed on behalf of the National Labor Relations Board (hereinafter called the Board), pursuant to the provisions of Section 10(l) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544), 29 U.S. C.A. § 160(l).
 
 
 2
 The petition for injunction filed in the district court was based on charges filed with the Board by Winwake, Inc., a Massachusetts corporation engaged in the building and construction business. These charges alleged that the respondents-appellants had engaged in and were engaging in unfair labor practices condemned by Section 8(b) (4) (i) (ii) (B) and Section 8(b) (7) (C). Section 8(b) (4) (i) (ii) (B) proscribes the "secondary boycott" and Section 8(b) (7) (C) proscribes certain "organizational" and "recognitional" picketing.
 
 
 3
 The Board, acting through its Regional Director, concluded that the appellants had engaged in unfair labor practices in violation of the above cited sections and that a complaint by the General Counsel of the Board should issue. Accordingly, the Board's Regional Director, invoking Section 10(l) of the Act, sought injunctive relief in the district court pending final disposition of the proceedings before the Board.
 
 
 4
 On September 5 and 6, 1961, the district court conducted a hearing on the petition. After taking evidence, the court granted the Board's request for injunctive relief. On this appeal appellants do not question the sufficiency of the evidence upon which the district judge based his findings and conclusions that respondents had engaged in conduct proscribed by Section 8(b) (4) (i) (ii) (B) and Section 8(b) (7) (C) of the Act. Consequently, we need not detail this evidence here. In this court appellants raise two issues, both of which relate to the jurisdiction of the district court to grant the instant injunction on the present record.
 
 
 5
 Appellants' initial contention is based on language in Section 10(l) relating to the investigatory duties of the Board in the course of a proceeding under this section. Section 10(l) provides in pertinent part:
 
 
 6
 "(l) Boycotts and strikes to force recognition of uncertified labor organizations; injunctions; notice; service of process.
 
 
 7
 "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4), (A), (B), or (C), of section 158(b) of this title, or section 158(e) of this title or section 158(b) (7) of this title, the preliminary investigation of such charge shall be made forthwith * * *. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. * * *"
 
 
 8
 In its petition for injunction, the Regional Director fully set forth the underlying facts upon which the allegedly proscribed activities were based and also alleged that the Director "has reasonable cause to believe that said charges are true." As mentioned previously, there was abundant evidence adduced at the hearing upon which the district judge properly could have found the charges to be substantiated. The respondents do not challenge the sufficiency of this evidence.
 
 
 9
 However, in his petition the Regional Director did not allege, to use the language of respondents' brief, "the facts as to the existence, character, or adequacy of the investigation." Neither at the hearing did the Board produce evidence directly relating to the extent or character of its investigation which preceded the filing of the petition. Relying on the above-cited statute, specifically the language that "the preliminary investigation * * * shall be made" and "If, after such investigation, * * * [there is] * * * reasonable cause to believe such charge is true * * * a complaint should issue," respondents contend that the failure to allege and prove the scope of the investigatory process constitutes a jurisdictional deficiency which should have rendered the district court powerless to issue the instant injunction.
 
 
 10
 We do not agree with appellants' contentions in this regard. To be sure Section 10(l) contemplates that the Board, acting through its agents, undertake some form of investigation of the facts underlying the complaints before filing its petition. Such an investigation, as a practical matter, will undoubtedly be necessary if the Board is to develop sufficient relevant and competent evidence to constitute the "reasonable cause" without which a district court may not grant the appropriate injunctive relief. Predictably, the lack of an adequate investigation, where such is the case, will be plainly obvious at the judicial hearing on the Board's petition where, in the language of the statute "Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony."
 
 
 11
 In contending that allegations and proof as to the scope of the Board's investigatory process are jurisdictional prerequisites in a Section 10(l) hearing, appellants rely principally on the 1958 decision of the Court of Appeals for the Seventh Circuit in Madden v. International Organization, etc., 259 F.2d 297. However, subsequent to this decision, the same court handed down its decision in Madden v. International Hod Carriers', etc., Union, 277 F.2d 688 (7 Cir. 1960), in which it clearly dispelled any support for appellants' contentions. There the court stated:
 
 
 12
 "It is our opinion that the scope, conduct or extent of the preliminary investigation are not matters relevant to or material for consideration on the issue to be adjudicated on hearing of a Section 10(l) petition, i. e., whether reasonable cause exists to believe a violation has occurred. This issue is to be resolved by the evidence adduced by the Board in open court to sustain its petition. The Board is enjoined to make a preliminary investigation but the adequacy of the investigation is judicially tested only by the Board's subsequent ability to sustain its initial determination that the investigation disclosed reasonable cause to believe that a violation occurred.
 
 
 13
 "The Union relies on observations made in Madden v. International Organization of Masters and Pilots, Inc., 7 Cir., 259 F.2d 297 as to concessions made by the Board in connection with its motion to dismiss its appeal from a district court's determination denying it injunctive relief under Section 10(l), in which motion the Board cited its own failure to conform with its Statements of Procedure in making the Section 10(l) preliminary investigation. The Union relies on these observations as constituting holdings that the preliminary investigation is a jurisdictional condition precedent to a Section 10(l) petition for temporary relief, and that an inquiry by the respondent into the scope and conduct of the Board's investigation in a Section 10(l) proceeding is a matter of right. We do not regard the remarks in Madden v. International Organization of Masters and Pilots, Inc., 7 Cir., 259 F.2d 297 as constituting such adjudications. And, insofar as those remarks may in any manner indicate anything contrary to the views herein expressed they are not adhered to." at 693.
 
 
 14
 In sum, we believe that the language of Section 10(l) relative to investigations should not be read as establishing a jurisdictional prerequisite, allegation and proof of which are preliminarily essential to the bringing of a Section 10(l) petition. Rather, it is our view that the pertinent provisions establish mandates for the Board — the noncompliance with which will undoubtedly spawn probative infirmities fatal to the relief it seeks.
 
 
 15
 Respondents next argue that by virtue of the Norris-LaGuardia Act (47 Stat. 70, 29 U.S.C.A. § 101 et seq.) the district court was without power to grant the instant injunction. This argument is premised on the basis that — even where it is the Board which is the moving party — the Norris-LaGuardia Act is applicable to proceedings under Section 10 (l) and conditions and constricts the operations of this section.
 
 
 16
 We find no merit in this position. Initially we note that Section 10(l) expressly provides that upon the filing of a petition by a regional officer or attorney "the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *." (Emphasis supplied.) Language of this sweep and scope takes on added significance when it is remembered that Congress was conspicuously mindful of the provision of the Norris-LaGuardia Act during the entire deliberation on the 1947 amendments. Moreover Section 10(h) of the Act clearly states that "when granting appropriate temporary relief or a restraining order, * * * the jurisdiction of courts sitting in equity shall not be limited by [the Norris-LaGuardia Act]."
 
 
 17
 A review of the legislative history of Section 10(l) persuasively shows that Congress intended to exempt Section 10 (l) proceedings from the reach of the Norris-LaGuardia Act. While retaining the Norris-LaGuardia restrictions on injunction suits by private parties, the committee reports and debates clearly show that Congress intended to free the Board from those restrictions when it proceeded under Section 10(l).
 
 
 18
 At the time of the Congressional deliberations, there were various proposals put forth, some of which would have completely repealed the Norris-LaGuardia Act relative to such conduct as union secondary boycotts, thus allowing courts to grant such injunctions even at the request of private individuals. These suggestions came under such fire that they were abandoned and the final bill, as it came from conference, was a compromise which retained the Norris-LaGuardia proscriptions on private suits but not on proceedings instituted by the Board. Thus, Senator Taft, in reporting on the compromise effectuated by the Senate — House Conference Committee — the version which was subsequently enacted as Section 10(l), commented as follows:
 
 
 19
 "The conferees rejected the broad prohibition of all kinds of strikes. They rejected the repeal of the Norris-LaGuardia Act. The provisions regarding injunctions are exactly those which were in the Senate bill, and were approved by the Senate. The only strikes which are declared to be illegal are secondary boycotts and jurisdictional strikes. In such cases the injunction can be obtained only through the National Labor Relations Board." (93 Cong.Rec. 6445-6446).
 
 
 20
 Senator Smith, referring to the provision in the Senate bill, which ultimately was enacted as Section 10(l), answered a Senate Minority Report Claim that the provision "slices a wedge out of the Norris-LaGuardia Act," as follows:
 
 
 21
 "* * * we were very careful in this bill to protect the injunctive process as it is protected in the Norris-LaGuardia Act, except in exceptional cases where the Government has to step in. In national paralysis cases we permit the Attorney-General to step in, and in the boycott and jurisdictional strike cases we permit the National Labor Relations Board to step in * * *." (93 Cong.Rec. 4283).
 
 
 22
 Moreover, Senator Ball, in commenting on this section similarly observed that the provision "means that when the regional attorney of the NLRB seeks an injunction the Norris-LaGuardia Act is completely suspended, as are Sections 6 and 20 of the Clayton Act." (93 Cong. Rec. 4834).
 
 
 23
 In sum, we believe that the above cited legislative history makes it abundantly clear that proceedings under Section 10 (l) are exempted from the Norris-LaGuardia Act. Moreover, the Supreme Court has recognized that where the Board is the moving party in a secondary boycott injunction suit, the Norris-LaGuardia Act has no application. Thus, in Bakery Sales Drivers Local Union No. 33 v. Wagshal, 333 U.S. 437, 442, 68 S. Ct. 630, 92 L.Ed. 792 (1948), the Court stated:
 
 
 24
 "* * * The short answer to the argument that the Labor Management Relations Act of 1947, 61 Stat. 136, 149, § 10(h), has removed the limitations of the Norris-LaGuardia Act upon the power to issue injunctions against what are known as secondary boycotts, is that the law has been changed only where an injunction is sought by the National Labor Relations Board, not where proceedings are instituted by a private party. * * *"
 
 
 25
 More recently, Judge Calvert Magruder, former Chief Judge of this court, sitting as a district judge in Puerto Rico, considered the impact of Norris-LaGuardia on proceedings under Section 10(l). On February 8, 1962, in granting an application by a Board regional director for a temporary restraining order to restrain the proscribed conduct until a hearing could be held on the Section 10 (l) petition (Compton v. Teamsters Local 910, Civil No. 57-62), he said:
 
 
 26
 "It is a matter of history that the practice of issuing temporary restraining orders and temporary injunctions led the Congress to pass in 1932 the Norris-LaGuardia Act, which took away from the federal district courts jurisdiction to issue such orders. It was objected that in many cases the issuance of such temporary relief only resulted in breaking a strike before the court could hear the case and finally dispose of it. It was also thought that the exercise of this power involved the courts in work that they ought not to do. See United States v. Hutcheson, 312 U.S. 219 [61 S.Ct. 463, 85 L.Ed. 788] (1940); Cox, Cases on Labor Law (4th ed.1958), pp. 100-106.
 
 
 27
 "It is true that the Act, as amended, has superseded the Norris-LaGuardia Act so far as application for injunctions by the public party, the Board, are concerned. Section 10 (h). No doubt this Court has the power to grant the relief sought here under Section 10(l) of the Act."
 
 
 28
 On February 13, 1962, after the hearing on the petition, Judge Magruder stated:
 
 
 29
 "In my memorandum of February 8, 1962, I expressed some reluctance to the granting of an ex parte restraining order, because of the history of such relief which eventuated in 1932 in the passing by Congress of the Norris-LaGuardia Act.
 
 
 30
 "Nevertheless, I pointed out in that memorandum that it was for the Congress to say the extent to which they would tolerate self-help in the struggle for economic power. It seemed to me that the Congress had spoken clearly in the Taft-Hartley Act amending the Labor Relations Act. There is no doubt that I have jurisdiction to grant a temporary injunction, so far as the petitioner happens to be the Labor Board, a government agency. * * *"
 
 
 31
 Judge Magruder granted the Section 10(l) injunction. See also, LeBaron v. Printing Specialties and Paper Converters Union, 75 F.Supp. 678, 681 (D.C.S. D.Cal.1948), aff'd, 171 F.2d 331 (9 Cir. 1948); Douds v. Local 294, etc., 75 F. Supp. 414, 418 (D.C.N.D.N.Y.1947).
 
 
 32
 In essence, respondents argue that the Norris-LaGuardia Act took the federal courts out of the business of granting injunctions in labor disputes and that this legislative judgment ought to be respected except on the showing of the strongest countervailing evidence. We agree with respondents but believe that in the Labor Management Relations Act of 1947 this Congressional judgment was revised to permit the Board, acting under Section 10(l) to seek injunctions against specific abuses of the kind found in this record. Thus, as was stated by the court in Douds v. Local 294, etc., supra:
 
 
 33
 "To impose the limitations of the Norris-LaGuardia Act upon the [Labor Management Relations] Act would be to impute to Congress an intention to grant to the Court a jurisdiction with restrictions thereon which would prevent its exercise." 75 F.Supp. 414 at 418.
 
 
 34
 Judgment will be entered affirming the order of the district court.